UNITED STATES (RODRIGUEZ v.). See Case No. 16,181.

## Case No. 16,186.

### UNITED STATES v. ROELLE et al.

[24 Int. Rev. Rec. 332; 6 Reporter, 550; 11 Chi. Leg. News, 18.] [1]

Circuit Court, N. D. Illinois. Oct., 1878.

VIOLATION OF INTERNAL REVENUE LAWS—IMMUNITY TO PERSON CHARGED WITH CRIME ON CONDITION OF TESTIFYING FOR THE GOVERNMENT—EFFECT OF—PARDON.

1. The court holds that the immunity promise to the "first batch" on condition that they testify fully and truthfully in reference to a conspiracy among certain officials, to defraud the government, must be carried out; that it is full and complete immunity, both civil and criminal.

2. The pardon granted to certain persons of the "second batch," does not relieve them from prosecution for the recovery of taxes assessed against them for violation of the revenue laws. Held, it is not competent for any officer of the government to donate or remit taxes due from the citizen under the laws of congress, for the collection of revenue.

Mr. Justice Harlan has recently disposed of numerous cases, in which the United States is a party, arising under the internal revenue laws. They were spoken of in argument as "first batch" and "second batch" cases. The "second batch" cases were actions of debt on distillery and warehousing bonds; breach, nonpayment of taxes. The "first-batch" cases comprised two actions of debt for the recovery of taxes assessed, six informations for the condemnation of spirits and other property, for alleged violations of the internal revenue laws, and two actions of debt for the recovery of the double tax penalty prescribed by that law for violation of its provisions. In each of the cases for condemnation and to recover double tax penalty, it appears that the defendants filed an amended answer, as follows: "And the said claimants, by, etc., say 'actio non,' etc., because they say that heretofore, to wit: on the 27th of December, A. D. 1875, at Chi-

cago, viz., at said Northern district of Illinois, the said plaintiff and the said claimants entered into an agreement by which it was, among other things, agreed that if the said claimants, Joseph Roelle and Anton Junker would testify on behalf of the plaintiff, frankly and truthfully, when required, in reference to a conspiracy among certain government officials in the internal revenue service, and other parties then known to exist, whereby the honest manufacture of distilled spirits and the collection of taxes thereon had been rendered practically impossible, and should plead guilty of one count in an indictment then pending against them in said district court, and should withdraw their pleas in certain condemnation cases then pending against their property in said district court, for the purpose only of insuring their good faith in so testifying on behalf of the plaintiff, the said plaintiff would recall any and all assessments under the internal revenue law then made against said claimants, and that no more assessments under said law should be made against said claimants and that no more proceedings against said claimants should be commenced on account of violation of the internal revenue laws then passed, and that no penalties or forfeitures should in any manner be enforced or recovered against them and their property, and that all suits for penalties or forfeitures then pending against them and their property should be dismissed, and that full and complete immunity, both civil and criminal, should be granted to said claimants. And these claimants aver that the said Joseph Roelle and Anton Junker, and each of them have fully and faithfully performed said contract on their part; and they further aver that this suit is for the condemnation and confiscation of their property, originally seized by the said plaintiff on the ground of said alleged violation of the internal revenue laws on the part of the said claimants, alleged to have been committed by them prior to entering into said agreement, and is one of the suits which the said plaintiff, under the terms of said agreement, fully kept and performed on the part of said claimants as aforesaid, agreed to dismiss and discontinue; and that the prosecution of this suit is contrary to and in violation of said agreement entered into, as aforesaid, between the said plaintiff and said claimants, and this these claimants are ready to verify; wherefore they pray judgment if the plaintiff ought to have his aforesaid action against them, etc."

Replications were filed by the United States, denying that any such agreement as that alleged had been made, and averring that the claimants had not fully and faithfully performed the said alleged agreement, in manner and form as in their plea alleged. At the April term, 1878, of the district court, it appears that, by leave of court, the replications filed in behalf of the government

---

[1] [6 Reporter, 550, contains only a partial report.]

were withdrawn and a general demurrer filed. At the June term, 1878, an order was entered in each of the six condemnation cases, in which it is stated that "the court doth find, both from the admissions made by said demurrer, and also from facts appearing upon the records and within the judicial knowledge of the court, that said claimants were used as witnesses by the government in criminal cases against their associates, upon the promise and understanding that this case should no further be prosecuted. It is, therefore, ordered by the court that said demurrer be overruled, and this case is dismissed, both by reason of the defence set up in said pleas, and also because of the finding of the court, from the facts appearing on the record and within the judicial knowledge of the court, that the cause ought to be no further prosecuted by the plaintiff." From that order appeals in the "first batch" cases for the condemnation of property were taken to the circuit court.

HARLAN, Circuit Justice, when announcing his decision, said: The demurrer admits the agreement set out in the amended answer. It must, therefore, be taken as true that the authorities of the United States stipulated with the defendants, respectively, that no further proceedings should be commenced against them on account of violations of the internal revenue laws then passed; that no penalties or forfeitures should in any manner be enforced or recovered against them and their property; that all suits for penalties and forfeitures then pending against them and their property should be dismissed; and that full and complete immunity, both civil and criminal, should be granted to them. The consideration for this stipulation was, it must be assumed, that the defendants should testify, frankly and truthfully, when required, in reference to a conspiracy among certain government officials in the internal revenue service, and other parties, whereby the collection of taxes had been rendered practically impossible, should plead guilty to one count in an indictment then pending against them in the district court, and should withdraw their pleas in certain condemnation cases then pending against their property. Upon the demurrer it must be also taken as true that the several defendants have fully and faithfully performed the alleged agreement.

Taking all these facts to be true, the question arises whether the order entered by the district court, that the condemnation causes be not further prosecuted, was authorized by law. The question thus presented is of the highest importance both to the government and to the citizen. It is by no means easy of solution. None of the authorities cited seemed to be directly in point, and the court has found much difficulty in reaching a conclusion entirely satisfactory to its own mind. Some light, however, is thrown upon the question by decisions in American courts. In Com. v. Brown, 103 Mass. 422, it appears that an indictment was returned charging Brown and Drake with assault and battery upon each other. Drake pleaded guilty, and Brown was tried and found guilty. Upon Brown's trial it appeared that the fight was by agreement, when Drake suddenly stabbed Brown with a knife. Brown immediately reported the facts to a police officer, on whose complaint Drake was brought before the municipal court for an assault on Brown with a knife. At the examination before the municipal court Brown appeared as a witness for the commonwealth, and Drake was held to bail for assault with a knife. Brown also appeared as a witness for the commonwealth, before the grand jury. Upon this evidence it was claimed that, as the commonwealth had accepted and used Brown as a witness, its faith was thereby pledged to protect him from harm by reason of his complicity in the offence set forth in the indictment. The attorney general of the state responded that in prosecuting the defendant there was no breach of public faith, since "there was no promise whatever, express or implied, by any person authorized or unauthorized, that he should be exempt from prosecution." Chief Justice Chapman disposed of the case in the following brief opinion: "It does not appear that any express pledge was made to the defendant. nor that any implied pledge was made to him by any one having authority to make it." A similar ruling was made in Com. v. Deneby, 103 Mass. 424. In the subsequent case of Com. v. Woodside, 105 Mass. 594, it appears that the defendant was indicted for embezzlement of the property of his employer. He filed a plea in bar relying upon certain facts, connected with his use by the commonwealth as a witness, as entitling him to be no further prosecuted. The supreme court of Massachusetts disposed of the case in these words: "The facts set forth in the plea in bar do not constitute a pledge; nor do they in any way operate as a bar to sentence."

The reports of these cases from the supreme judicial court of Massachusetts, do not show what the decision would have been had the prosecution of the defendants directly involved a violation of the pledge of those representing the government, and a breach of the public faith. But since the pleas in those cases were overruled partly upon the ground that there had been no agreement or promise, express or implied, of immunity from prosecution, it is not an unreasonable inference that, had such agreement or promise been clearly established or admitted, the action of the court might have been such as to protect the defendant from the prosecution. Without discussing the matter fully, the court has concluded in view of the circumstances attending these cases, and in order that these questions may be passed upon by the supreme court of the

United States, before further action upon the part of the prosecuting officers, to affirm the judgments in the six condemnation cases (Nos. 15,689–15,694). The district attorney can at once take one or all of these cases to the supreme court of the United States where it is not doubted, they will be advanced, if the attorney-general so desires. In case 12,-893, for the recovery of the double tax penalty, the same principles should govern as in the condemnation cases. The trial of that case can await the result of the condemnation cases in the supreme court of the United States. The remaining cases of the "first batch," (14,169 and 14,170), being two actions of debt for the recovery of taxes assessed, and all the cases of the "second batch," (Nos. 13,345, 13,346, 13,566, 13,561, 13,804, 13,805, 13,821, 14,167, and 14,173), being actions of debt on distillery and warehousing bonds for non-payment of taxes, rest altogether upon different grounds. In the "second batch" cases, the defendants present a petition averring an agreement between them and the United States officials, conducting the suits, under which they claim exemption from the payment of the taxes sued for. As to four of the defendants, A. C. Hesing, Geo. S. Burroughs, Henry B. Miller, and Simon Powell, a pardon was granted them the 21st of September, 1876, of certain offences for which they were prosecuted under the provisions of the Revised Statutes. It is claimed that the assessments of taxes against those defendants are based upon the violation of the internal revenue laws for which they were indicted. The prayer of the petition is that the court interpose and, to the end that the government may be compelled to keep its said alleged agreement, restrain the further prosecution of these suits for taxes assessed.

The prayer of the petitioners in these tax cases cannot be granted. It is not competent for any officer of the government to donate or remit taxes due from the citizen under the laws passed by congress for the collection of revenue. Disputed claims for taxes may be compromised in the mode prescribed by law. These cases do not belong to that class. The pardon of certain criminal offences granted to the four defendants, heretofore specially named, does not purport to relieve those parties from taxes assessed or due under the provisions of law. The power conferred upon the president to grant pardons or remit fines and forfeitures does not embrace the power to relieve from the payment of taxes. Nor did he assume to exercise such power. Congress alone can do that. It might perhaps confer such power upon some department or officer of the government, but it has not done so.

Let the demurrer of the government to the pleas in Nos. 14,169 and 14,170 be sustained, and the petition of defendants in cases Nos. 13,345, 13,346, 13,561, 13,566, 13,804, 13,805, 13,821, 14,167, and 14,173, is denied.